Ronnie RAILE, Petitioner

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 05SC756.

Supreme Court of Colorado,
En Banc.

Nov. 20, 2006.

Douglas K. Wilson, Colorado State Public Defender, Ned R. Jaeckle, Deputy State Public Defender, Denver, Colorado, Attorneys for Petitioner.

John W. Suthers, Attorney General, Patricia R. Van Horn, Assistant Attorney General, Denver, Colorado, Attorneys for Respondent.

Justice MARTINEZ delivered the Opinion of the Court.

## Introduction

We confront for the first time the admissibility at trial of the hearsay statements of an unavailable witness made during the course of an initial police investigation in light of *Davis v. Washington.* Ronnie Raile was convicted at trial of second degree burglary, violation of a restraining order, and first degree criminal trespass. Raile appealed his conviction asserting that his right to confront and cross-examine witnesses was violated by the trial court's admission of an unavailable witness's testimony. After trial and during his appeal, the Supreme Court of the United States issued *Crawford v. Washington* significantly altering Confrontation Clause jurisprudence.

Prior to *Crawford,* the admissibility of testimonial hearsay statements was subject to a reliability test set forth in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). In contrast, *Crawford* held that *no* testimonial hearsay could be admitted at trial unless the declarant was unavailable and the accused had a prior opportunity to cross-examine the declarant, effectively overruling *Roberts* with respect to the admissibility of testimonial hearsay. *Crawford,* 541 U.S. 36, 53–54, 124 S.Ct. 1354, 158 L.Ed.2d 177. Applying *Crawford,* the court of appeals disagreed with Raile, finding that the challenged statements were not testimonial and thus properly admitted. *People v. Raile,* No. 03CA1560, slip op. at 17, 2005 WL 2157500 (Colo.App. Sept.8, 2005)(not selected for pub-

lication). Raile appealed and we granted certiorari.

After we granted certiorari, but before oral arguments, the Supreme Court issued *Davis v. Washington.* In *Davis,* the Supreme Court elaborated on the meaning of "testimonial." We now review this case in light of both the *Crawford* and *Davis* decisions. We find that the statements made by the witness to the investigating officer were testimonial and their admission violated Raile's constitutional right to confront witnesses. However, this error was harmless beyond a reasonable doubt. Therefore, we affirm the decision of the court of appeals on separate grounds.

## I. Facts and Procedural History

A jury found Ronnie Raile ("Raile") guilty of second degree burglary, violation of a restraining order, and first degree criminal trespass. At the same time, he was acquitted of a harassment charge. During the trial, the court allowed a police officer to testify to the hearsay statements of Justine Cone ("Cone"), an unavailable witness who did not testify and who was not subject to cross examination by Raile. The witnesses who did testify described the following events.

During the early morning hours of June 14, 2002, Raile visited a trailer owned by Angela Kent ("Kent"). Raile was there to visit his wife, who, according to her testimony at trial, invited him over to talk that evening. Raile's wife left the back door unlocked so he could come in that night. Along with Kent and Raile's wife, also in the trailer were Raile's stepdaughter, his wife's friend Cone and Cone's baby. Raile's wife testified that she was staying in one bedroom, Kent in a second bedroom and Cone was in a third room. At the time Raile visited the trailer, there was a "no contact order" in effect that prevented Raile from having any contact with his wife or stepdaughter.[1]

When Raile entered the back door to the trailer, his wife was already in bed. As Raile went to his wife's room, Cone encountered Raile in the hallway of the trailer where an altercation between them ensued. Cone then went to Kent's bedroom and said that Kent "needed to call the cops." Kent described Cone as afraid and shaking but not crying when Cone walked into her bedroom.

At trial, Kent testified to the statements that Cone then made to her: that Raile pushed her, knocked her into the wall while she had her baby in her arms, and that he was coming into the house and "hitting people." Kent did not call the police right away. Rather, she left her bedroom and checked the house. Kent then explained that because Cone "was in such a manner that she wasn't comfortable with what was going on," Kent decided to call the police. Cone never testified. The trial court, after hearing Raile's Confrontation Clause and hearsay objections, ruled that these statements were admissible under the "excited utterance" exception to otherwise inadmissible hearsay.[2]

After Kent testified, Officer Swisher ("Swisher") took the stand. Swisher testified that Cone told him that Raile did not knock or announce himself, that he had pushed her, that he was screaming and yelling, and that she was scared that Raile was going to punch her. Swisher described Cone as upset and angry at the time that he spoke with her.

When describing the scene that night, Swisher testified that within five minutes of receiving the dispatch call, he and Officer Parker, both from the Thornton Police Department, arrived. The call was relayed to them as an "in-progress burglary" where the "suspect may still be inside." As a result, they parked their police car down the street and approached cautiously on foot.

At trial, Swisher testified that when he arrived, Cone was standing on the front porch of the trailer and told Swisher "he's around back." Swisher and Parker went to the back of the trailer and spotted Raile bent over looking into a window and yelling. Swisher then confronted Raile, telling him to turn around and put his hands up. Swisher asked Raile what he was doing there. Raile, in compliance with Swisher's request, re-

---

1. The no contact order was issued pursuant to § 1811001 as part of a separate criminal case.

2. The admissibility of Cone's statements to Kent is not at issue here.

sponded by saying he was "chasing someone away from the home." Not knowing if Raile was a suspect, Swisher patted him down for weapons and, finding none, led him around to the front of the trailer. Swisher described Raile's demeanor as initially agitated and upset, but very polite and cordial after Raile calmed down.

At some point after bringing Raile to the front of the trailer, Swisher took statements from everyone present including Cone, who made both verbal and written statements to the investigating police officers at the trailer that night. Due to the leading questions of the prosecutor at trial, it is unclear exactly where or how Swisher obtained Cone's statements.[3] However, Kent testified that when the police came in: "they took all our stuff down, we were all in the room writing it down all at the same time." Relying on his previous ruling that Cone's statements to Kent were "excited utterances," the trial court judge also admitted Cone's statements as offered through Officer Swisher.[4]

Raile objected throughout the trial to the admission of Cone's out-of-court statements on both hearsay and Confrontation Clause grounds. On appeal, Raile argued that the trial court's admission of Cone's hearsay statements violated his Sixth Amendment right to confront witnesses under the newly issued United States Supreme Court opinion *Crawford v. Washington.*[5] The court of appeals, applying *Crawford,* found Cone's statements were nontestimonial and thus properly admitted under an exception to the hearsay rule that otherwise excludes such evidence. *Raile,* slip op. at 17. After rejecting Raile's

other issues, the court of appeals affirmed Raile's conviction. *Id.* at 29. Raile petitioned this Court for certiorari to review, among other matters, the court of appeals' finding that Cone's statements to Officer Swisher were nontestimonial.

We granted certiorari to review whether Cone's statements to Officer Swisher were testimonial. During the time between certiorari being granted and oral arguments, the United States Supreme Court issued *Davis v. Washington,* —— U.S. ——, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), addressing the scope and meaning of "testimonial" statements in the context of the Sixth Amendment and *Crawford.* Using *Crawford* and *Davis* as our guides, we find that Cone's statements to Officer Swisher were testimonial. However, we also find that the admission of these statements was harmless error. We therefore affirm the court of appeals on other grounds.

## II. Analysis

■ The Sixth Amendment of the Constitution of the United States guarantees an accused the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. This guarantee applies to state as well as federal prosecutions. *Crawford v. Washington,* 541 U.S. at 42, 124 S.Ct. 1354. Raile argues that his right to confront witnesses was violated when the trial court admitted the hearsay statements of an unavailable witness he did not have the opportunity to cross-examine. Applying the precedent established in *Davis v. Washington,* we agree.

3. Cone's written statement was not admitted at trial. However, because of the nature of the leading questions of the prosecutor, it is impossible to tell whether the officer was recounting Cone's initial verbal statement or her later written statement. In any event, the difficulty in distinguishing between the verbal and the written statement does not affect our analysis, as both were testimonial.

4. Following the prosecutor's leading questions, Swisher agreed that Cone told him that Raile "didn't knock or announce himself", that he had "pushed her using his whole body", that he "went to [his wife's room] screaming and yelling", that Cone told him that Raile called Cone names and "told her to stay out of his business,"

that he yelled at his wife some more, and Raile "started to walk out." Continuing, Swisher agreed that Cone said that Raile "got in her face and told her that he was going to beat her ass," that he "pushed her in the chest" and he "went to fake punch her." Finally, Swisher confirmed that Cone had demonstrated Raile's fake punch.

5. *Crawford v. Washington* held that testimonial statements by an unavailable witness not subject to cross-examination must be excluded under the Confrontation Clause of the Sixth Amendment to the Constitution and overturned the admissibility test used in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

### A. Testimonial Hearsay Statements under *Davis*

■ Under the Sixth Amendment to the United States Constitution, testimonial hearsay must be excluded when the declarant is unavailable and there has been no prior opportunity for cross-examination by the defendant. *Crawford*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177; *People v. Vigil*, 127 P.3d 916, 921 (Colo.2006).[6] It is the testimonial nature of the statement that subjects some hearsay statements to exclusion under the Confrontation Clause, while others are merely subject to the rules of evidence. *Davis*, 126 S.Ct. at 2273. Certain "core" testimonial statements are always subject to the limitations of the Confrontation Clause.[7] These core statements also form the "perimeter" of what may be considered "testimonial" statements for Confrontation Clause purposes. *Id.* at 2274.

■ Testimonial statements subject to exclusion under the Sixth Amendment include statements taken by police officers during the course of interrogations, such as the statements at issue in Crawford itself.[8] *Id.* at 2273. Crawford used "police interrogation" in a broad colloquial sense, rather than a technical legal sense. *Id.* However, it is the statements themselves and not the interrogator's questions that must be evaluated to determine whether a statement is testimonial in nature. *Id.* at 2274 n. 1.

To determine the nature of hearsay statements, the context and circumstances under which the statements are made are highly relevant. *See Davis*, 126 S.Ct. at 2273–74 (noting that the primary purpose of the statements, as determined by an objective view of the circumstances, generally determines whether or not statements are testimonial); *see also Harkins v. State*, — Nev. —, —, 143 P.3d 706, 714 (2006)(noting

that when determining whether a statement is testimonial, it is necessary to look at the totality of the circumstances surrounding the statement); *State v. Blue*, 717 N.W.2d 558, 562–63 (N.D.2006)(noting that whether a declarant was acting as a witness and in essence testifying should be determined by the surrounding circumstances).

■ When circumstances objectively indicate that the primary purpose of the interrogation is either to elicit statements that establish or prove past events, or to elicit statements that are potentially relevant to a later criminal prosecution, the statements elicited are testimonial. *Davis*, 126 S.Ct. at 2273–74. On the other hand, statements made during an ongoing emergency to assist police officers in their efforts to assess the present situation are nontestimonial. *Id.* Further, it is not relevant to the analysis whether the interrogating police officer either thought there was an ongoing emergency or acted as if responding to an ongoing emergency. *See Davis*, 126 S.Ct. at 2279 n. 6 (noting "[a police officer] saying that an emergency exists cannot make it be so ... neither can police conduct govern the Confrontation Clause; testimonial statements are what they are."). The proper perspective is whether there was an ongoing emergency from the point of view of an objective reasonable witness. *Id.* at 2276. The question then becomes whether, from the point of view of an objective reasonable witness, the declarant's statements were made in response to that ongoing emergency. *Id.*

In two companion cases decided in the same opinion, the Supreme Court in *Davis* explored the boundary between police interrogation resulting in testimonial statements and an interrogation producing nontestimonial statements made during an ongoing emergency. The Court conducted a general inqui-

---

6. We note that *People v. Vigil* was decided before this Court had the benefit of the *Davis* decision and that we are bound to follow later decisions by the United States Supreme Court.

7. The "core classes" of testimonial statements are: 1) *ex parte* in-court testimony or its equivalent, 2) extrajudicial statements contained in formalized testimonial materials, and 3) statements that were made under circumstances such that

an objective witness would believe that the statements would be used at a later trial. *Crawford*, 541 U.S. at 51–52, 124 S.Ct. 1354.

8. The statements at issue in *Crawford* were taken while the declarant was in police custody as a possible suspect, under interrogation, and after *Miranda* warnings were given. *Crawford*, 541 U.S. at 38–39, 124 S.Ct. 1354.

ry that explored how the statements were made, what the statements were to be used for, whether there was an ongoing emergency, the formality of the interrogation, and what the statements themselves describe. *Id.* at 2276–80. In a fact-specific analysis, each case yielded a different result.

The lead case, Davis v. Washington,[9] involved statements made during a recorded 911 emergency call where portions of the recording were played to the jury. The Supreme Court, per Justice Scalia, determined that the admitted statements from the 911 call were nontestimonial but other statements made during the same call could be readily described as testimonial. *Davis,* 126 S.Ct. at 2276–77. The nontestimonial statements were the initial statements made at the beginning of the 911 call. *Id.* However, the emergency ended when Davis drove away and the operator took control by telling the declarant to be quiet and answer questions. *Id.* The declarant's statements thereafter took on a testimonial nature "not unlike the structured police questioning that occurred in *Crawford.*" *Id.* (internal quotations omitted).

In determining that the initial statements were nontestimonial, the Court considered a number of circumstances and characteristics. First, the Court noted that the declarant described events as they were actually happening, rather than past events. *Davis,* 126 S.Ct. at 2276. The declarant told the 911 operator "[h]e' s here jumpin' on me again" and "[h]e' s usin' his fists." *Id.* at 2271. Second, the statements were made during an ongoing emergency. *Id.* at 2276. As the Court explained, the declarant's call was "plainly a call for help against bona fide physical threat." *Id.* Third, the statements were necessary to resolve the present emergency, not to learn what happened in the past. *Id.* The operator asked "what's going on?" and then asked the declarant if she was in a house or apartment, if there were any weapons, and was the assailant drinking. *Id.* at 2271. The operator's questions, and the declarant's answers, were all in the present tense. *Id.* Fourth, the Court considered the

level of formality of the questions and answers, noting that the declarant provided "frantic answers" in an unstable or even unsafe environment. *Id.* at 2277. The Court concluded that the primary purpose of the initial questions posed by the 911 operator were to enable the police to meet an ongoing emergency. *Id.* Under these circumstances, the initial 911 statements were nontestimonial. *Id.*

We note that the *Davis* decision does not stand for the proposition that all 911 calls are nontestimonial or even that all parts of a 911 call are nontestimonial. In *Davis,* the tipping point from when the nontestimonial statements became testimonial was reached when the 911 operator took control of the situation and cut off the declarant, telling her to "stop talking and answer my questions." *Davis,* 126 S.Ct. at 2271. At that point in the conversation, the questions changed from gathering information about the emergency to gathering information about the suspect. *Id.* Thus, the Supreme Court in *Davis* clearly indicated that statements beginning as nontestimonial statements can later become testimonial. *See id.* at 2277 (noting that "trial courts will recognize the point at which … statements … become testimonial, as they do … with unduly prejudicial portions of otherwise admissible evidence"); *see also State v. Kirby,* 280 Conn. 361, 383, 908 A.2d 506 (2006)(finding statements made to a 911 operator by a woman who had just escaped from a kidnapping and assault were testimonial because she had already escaped, despite the fact that she might have needed emergency medical assistance at the time she made the 911 call); *State v. Mechling,* 219 W.Va. 366, 633 S.E.2d 311 (2006) (holding that once it becomes objectively apparent the emergency has passed, police questions are likely to elicit testimonial statements subject to the Confrontation Clause).

After concluding the initial statements in *Davis* were nontestimonial, the Court then examined the admitted hearsay statements in *Hammon v. Indiana,*[10] and, in contrast, found them to be testimonial. *Hammon* presented an entirely different factual situation

---

9.  No. 05–5224 (2006).

10.  No. 05–5705 (2006).

from *Davis*. *Hammon* involved statements made by a declarant who was initially contacted by police alone on the front porch. *Davis*, 126 S.Ct. at 2272. The declarant appeared frightened, but she told the police nothing was the matter and gave them permission to enter the home. *Id.* Inside, the police saw flames coming out of a gas heating unit and broken glass on the floor. *Id.* The defendant was inside the kitchen. *Id.* The police kept the two separated and began to question the declarant about "what had occurred." *Id.* Determining that the declarant's statements were testimonial under these circumstances was "a much easier task" for the Supreme Court. *Id.* at 2278.

In contrast to the statements in *Davis*, the Court's examination of *Hammon* noted that there was no emergency in progress despite the fact that there were flames coming out of a gas heater and that during the questioning of the declarant, the defendant became angry and even tried to "participate" in the police interrogation of the declarant. *Davis*, 126 S.Ct. at 2278. The Court also noted there was no immediate threat to the declarant's person. *Id.* In addition, the officer's questions elicited statements about what happened, not what was occurring at that moment. *Id.* The Court determined that, viewed objectively, the primary purpose of the interrogation was to investigate a possible crime. *Id.*

The Court continued its analysis and noted that, though it was an onscene investigation, the declarant's interrogation was conducted in a separate room away from the defendant. *Davis*, 126 S.Ct. at 2278. The declarant's responses were for the officer's use in the investigation. *Id.* The declarant even made a formal written statement. *Id.* However, both the verbal and written statements were made "in response to police questioning [about] how potentially criminal past events began and progressed." *Id.* The interrogation was "formal enough" that the statements were testimonial and thus subject to the limitations of the Confrontation Clause. *Id.* "Such statements under official interrogation are an obvious substitute for live testimony, because they do precisely *what a witness does* on direct examination; they are inherently testimonial." *Id.* (emphasis in original); *see Kir-*

*by*, 280 Conn. 361, 385, 908 A.2d 506 (holding that when police interview a victim in her home who reported that she was just kidnapped and assaulted, the statements are testimonial because they are investigatory); *Blue*, 717 N.W.2d at 564 (holding that videotaped testimony of a child victim of sexual assault by a forensic interviewer was in preparation for trial and thus testimonial); *Mechling*, 633 S.E.2d at 323 (holding where police arrive on scene after being dispatched to a domestic violence call and interview the victim, those statements cannot substitute for the victim's live testimony because such statements are inherently testimonial). Having examined the Supreme Court's approach in *Davis* and *Hammon*, we now turn to the case before us today.

**B. Cone's Statements to Officer Swisher**

■ The facts of this case more closely resemble the facts in *Hammon* than the facts in *Davis*. Cone was contacted by police alone on the front porch, exactly like the declarant in *Hammon*. Cone, though upset (like the declarant in *Hammon* ), did not ask for help. Instead she said "he's around back." There was no immediate threat to Cone's person. During the incident itself while Raile was in the trailer, and despite Cone's statements that she had been pushed, Kent did not call the police right away. Instead Kent checked around the house, and then later called the police because Cone was uncomfortable.

Later, the police took separate statements from each witness, including Cone. Like the declarant in *Hammon*, the police also asked Cone to make a formal written statement. Cone never asked for help for herself. Rather she did what a witness would do on direct examination and what the declarant in *Hammon* did—she recounted how potentially criminal events began and progressed. In short, Cone was "testifying" to the police officer in the same way that she would have testified in court.

Swisher testified that Cone said Raile came through the back door and that he had pushed her. Cone continued by telling Swisher that Raile then went into his wife's room, that he was calling them names, and

that he got in her face and then threatened her with a "fake" punch. None of those statements were in the present tense or related to an event in progress. These statements described a past event, made in response to Swisher's questions. Swisher even had Cone demonstrate how Raile had threatened to punch her. There was nothing in either the police questions or Cone's answers that would or could resolve a then-existing problem. Cone's statements were made in response to a police interrogation whose primary purpose was to investigate possible crimes that had already been completed. Objectively considered, there was no ongoing emergency at the time that Cone spoke to Officer Swisher. Cone's statements were testimonial.

Even if there were an ongoing emergency when the police arrived, like the 911 statements in *Davis*, the emergency ended once the police had control of the situation. Police uncertainty about whether Raile was a suspect cannot transform Cone's later statements into nontestimonial statements. As the *Davis* Court noted, it is the statements themselves that must be examined from the point of view of an objective observer. Therefore, we do not examine whether Officer Swisher thought there was an ongoing emergency. Rather, we look to whether a reasonable declarant would perceive an emergency when Cone made her statements and whether Cone's statements were made in response *to that emergency. See Davis*, 126 S.Ct. at 2273–74. At the time Cone made her statements to Swisher, Cone was not asking for help, she was not in any danger, the situation was under the control of the police, and even Raile was under control. Considered objectively, there was no emergency. Thus, Cone's statements, made in response to police interrogation, produced testimonial statements.

To illustrate further that Cone's statements here were testimonial, we can contrast them to the initial statements in *Davis*. Unlike the 911 caller in *Davis*, Cone did not describe an event that was actually happening, nor were her statements made during an ongoing emergency. They were made after police had control of the situation. The caller in *Davis* was calling for immediate help, whereas here Cone never asked for police assistance from Swisher. Unlike the 911 caller, Cone's statements were not made in a frantic or unstable situation. By the time Cone made her statements, Raile had become polite and compliant. Raile did not even try to interject himself into Cone's interrogation. Thus, in contrast to the statements in Davis, Cone's statements cannot be classified as nontestimonial.[11]

In conclusion, the primary purpose of Swisher's interrogation was to elicit statements that established, and that were potentially relevant to, a later criminal prosecution. We reach this conclusion by examining how Cone's statements were made, what the statements were used for, whether there was an ongoing emergency, the formality of the interrogation, and what the statements themselves described. It is clear from the evidence that, in light of the context and circumstances, Cone's statements to Officer Swisher were testimonial and therefore their admission violated Raile's right to confront the witnesses against him.

### III. Harmless Error Analysis

▆▆▆▆ Having found that the admission of Cone's statements through Officer Swisher was a violation of Raile's constitutional right to confront the witnesses against him, we now turn to whether this error was harmless beyond a reasonable doubt. This is the standard we apply to trial errors such as Confrontation Clause violations. *People v. Fry*, 92 P.3d 970 (Colo.2004). We review trial errors such as these for the effect they had on the trial. *See Sullivan v. Louisiana*, 508 U.S. 275, 279–80, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); *Blecha v. People*, 962 P.2d 931, 942 (Colo.1998). This is not an analysis of whether a guilty verdict would have been rendered in a trial without the error, but what effect the error had on this verdict. *See Sullivan*, 508 U.S. at 279, 113 S.Ct. 2078.

---

**11.** Whether or not such statements meet the standard for the excited utterance hearsay exception under the rules of evidence is a separate

analysis distinct from the threshold question of admissibility under the Confrontation Clause, one we do not engage in here.

We are guided in our analysis by various factors "including the importance of the witness' testimony to the prosecution's case, whether the testimony was cumulative, the presence or absence of corroborating or contradictory evidence on the material points of the witness' testimony, the extent of the cross-examination otherwise permitted, and the overall strength of the prosecution's case." *Blecha,* 962 P.2d at 942 (citing *Merritt v. People,* 842 P.2d 162 (Colo.1992)). If there is a reasonable probability that the defendant could have been prejudiced by the error, it cannot be a harmless error and, as the reviewing court, we must reverse the conviction below. *Blecha,* 962 P.2d at 942. Applying these standards, our review of the record indicates that the admission of Cone's statements was harmless beyond a reasonable doubt.

The only disputed issue at trial was whether or not Raile was invited to come over.[12] Raile's defense at trial was that if he was invited, he was not guilty. The prosecutor argued that Raile did not have permission to enter the trailer, thus he was guilty of both burglary[13] and criminal trespass.[14] Raile argues that Cone's testimony affected whether or not Raile was invited to enter in three ways: first, Cone's testimony supported the prosecution's assertion that Raile was not invited to enter because he acted like he was not invited to enter; second, Cone's testimony undermined Raile's wife's credibility upon which Raile's invitation defense rested; and third, that Cone's testimony was highly prejudicial. After a full review of the record, we reject the notion that Cone's statements had a reasonable probability of prejudicing Raile at trial.

First, Raile argues that Cone's statements are not harmless error because her description of Raile to Swisher was consistent with the prosecution's theory that he entered the trailer uninvited.[15] According to Cone, Raile walked in and then they had an altercation. This was consistent with his wife's statement that she left the back door unlocked. Also, Cone never testified about whether or not Raile had permission, nor could she, she did not know. Rather, she merely testified to what happened after she encountered Raile, who was already inside the trailer. Further, Raile's wife was not present when Raile entered. She did not testify about what happened after Raile entered but before he came to her room, other than to discredit Cone's story generally. Thus, any support Cone's statements might have provided to the prosecution's theory that Raile was not invited was indirect and insubstantial. Raile's wife and Cone each testified about two different events. Raile's wife testified about what happened before Raile entered the trailer, and Cone testified to what happened after Raile entered. The statements were not inconsistent.

What is also clear from the record is that the prosecution gave very little importance to Cone's statements as they related to the burglary or the criminal trespass charges. The prosecution's sole comment about Cone's statements regarding Raile's entrance was: "the defendant walked in, he shoves her." Even more importantly, the prosecution nev-

---

12. Raile conceded during opening statements that he was guilty of the Violation of Restraining Order charge. He consistently denied that he harassed Cone and was acquitted of that charge.

13. Pursuant to section 18–4–203: "A person commits second degree burglary, if the person knowingly ... enters unlawfully in, or remains unlawfully after a lawful or unlawful entry ... with intent to commit therein a crime against another person or property." § 18–4–203, C.R.S. (2006). The statutes remain unchanged from the date of the offense, therefore we cite to the current version.

14. Pursuant to section 18–4–502: "A person commits the crime of first degree criminal trespass if such person knowingly and unlawfully

enters or remains in a dwelling of another." § 18–4–502, C.R.S. (2006).

15. The prosecution responded to Raile's defense that he was invited inside the trailer with two arguments: first, Raile's wife did not invite Raile over, contrary to her testimony at trial; and second, the restraining order made Raile's entry unlawful. The court of appeals addressed Raile's defense that he was invited by assuming that it was error for the prosecution to argue that the restraining order made Raile's entry unlawful as a matter of law. *Raile,* slip. op at 23–24. We make the same assumption without deciding the issue here and limit our review of the effect of Cone's statements on the trial to Raile's defense that he was invited.

er connected Raile's actions to whether or not he had permission to enter. If Cone's statements were important to the outcome of the trial, it was as support for the harassment charge, not the burglary or criminal trespass charges.[16]

Further undermining Raile's position is the fact that Cone's statements were consistent with the defense's own version of the events that night. During opening statements, defense counsel told the jury: "Mr. Raile comes on over, the door is unlocked, he walks in. There are problems inside and the police are called." Cone's statements were consistent with defense's theory that there were "problems" inside, a theory they asserted from the beginning of the trial.

Finally, Cone also made statements to Kent that were admitted by the trial court and not under review here.[17] Those statements were very similar, though not cumulative of, Cone's statements to Swisher. Kent testified that Cone told her that Raile pushed her, knocked her into the wall while she had her baby in her arms, and that he was coming into the house and "hitting people." Swisher testified that Cone told him that Raile did not knock or announce himself, that he had pushed her, that he was screaming and yelling, and that she was scared that Raile was going to punch her. To the extent that the prosecution's case was supported by Cone's statements to Swisher, the case was similarly supported by Cone's statements to Kent.

As we already noted, the connection between Cone's statements and the inference that Raile was uninvited was tenuous because Cone never addressed whether Raile was invited. The lack of a direct connection between Cone's statements and the inference that Raile was uninvited, combined with the inclusion of Kent's statements, makes it difficult to perceive how Cone's statements were anything other than harmless, insofar as they related to the jury's understanding of whether Raile's behavior was consistent with an uninvited entrance.

Raile makes a second argument against harmless error: that the admission of Cone's statements to Swisher was not harmless because they undermined the credibility of Raile's wife who provided the basis of Raile's defense that he was invited. At trial, Raile's wife recanted her statement to Officer Swisher that she did not invite Raile over that night. Instead, she testified that she did invite Raile over and that she left the back door unlocked so he could come in. Her daughter (Raile's stepdaughter) also testified on the stand that her mother had been on the phone all night trying to get Raile to come over. Raile argues that, in order to establish that Raile did not have permission to enter the trailer, the prosecution used Cone's statements that he entered in an unruly way to undermine the credibility of Raile's wife's in-court testimony. Thus, Raile argues that, if believed, Cone's statements would lead a juror to conclude that Raile's wife never really invited him over and therefore find him guilty of burglary and criminal trespass.

The credibility of Raile's wife was clearly an important issue at trial. We note, however, that everyone agreed to what happened once Raile entered the trailer—there were "problems inside"; and Cone's statements to Swisher were limited to those problems. Moreover, though the defense clearly wanted the jury to believe that Raile was invited over, defense counsel also directly attacked Raile's wife's credibility. Defense counsel described Raile's wife during closing arguments as a liar who both lied to police and lied on the stand: "Because a woman that would lie under oath would lie to a police

---

16. Defense counsel also argued at trial that Cone's statements were offered to support the harassment charge by objecting to the inclusion of the harassment jury instruction and verdict form because the charge was supported entirely by the objectionable hearsay at the heart of this appeal.

17. Kent was not a police officer and Cone did not make her statements in response to question-ing by Kent. Instead, her statements to Kent were clearly a request for help during an ongoing emergency. Further, her statements do not fit into any of the three "core" testimonial statements described in *Crawford*. Accordingly, we accept without reviewing the court of appeals' finding that they were not testimonial for the purpose of conducting our harmless error analysis here.

officer. You can't believe it. You can't believe her then, you can't believe her now, there is just no way." Thus, even if Cone's statements served to impeach Raile's wife's credibility, defense counsel did so as well—and much more directly. Under these circumstances, we cannot say that any harm done to the credibility of Raile's wife by Cone's statements had any effect above Raile's wife's inconsistent statements, which were emphasized in defense counsel's own arguments. The admission of Cone's statements to Swisher was harmless.

Raile finally argues that Cone's statements to Swisher were much more "horrific" and explicit, prejudicial, and cumulative of the statements admitted through Kent. However, the inconsistencies between Cone's statements to Kent and to Swisher were minor. Kent testified Cone told her that she was holding her baby when Raile pushed her, but Swisher, when asked, said Cone did not say that to him. Another inconsistency between the statements made by Cone to Kent, versus Cone's statements to Swisher, related to whether or not Raile had hit people; Cone told Kent that he did, but said nothing to Swisher. Because the defense theory conceded that there were "problems" we can see no reason to believe that the minor differences between Cone's statements to Swisher and Kent were of such a degree so as to effect the jury's decision.

Based on our review of the record, there is no reasonable probability that the defendant could have been prejudiced by Swisher's wrongfully admitted testimony regarding the statements that Cone made to him at the scene. Any impact the statements had on Raile's defense that he was invited into the trailer that night was insubstantial, indirect and therefore harmless. As such, though their admission was error, it does not warrant a reversal of Raile's conviction.

### IV.  Conclusion

Because Cone's statements, as testified to by Officer Swisher, were testimonial, the defendant was entitled to confront and cross-examine Cone before her statements could be admitted at trial. Because Cone was unavailable, and Raile did not have the op-

portunity to cross-examine Cone, admission of her statements violated Raile's Sixth Amendment rights under *Crawford v. Washington* and *Davis v. Washington.* However, there is no reasonable probability that Raile was prejudiced by the admission of the statements; thus, the trial court's error was harmless. We therefore affirm the decision of the court of appeals on different grounds.

Justice EID does not participate.