**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Daniel E. TREVIZO, Defendant–Appellant.**

**No. 06CA0029.**

Colorado Court of Appeals, Div. III.

Dec. 13, 2007.

Rehearing Denied Feb. 15, 2008.

John W. Suthers, Attorney General, Jonathan Patrick Fero, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David W. Foley, P.C., David W. Foley, Colorado Springs, Colorado; McAllister Law Office, P.C., Sean T. McAllister, Breckenridge, Colorado, for Defendant–Appellant.

Opinion by Judge CRISWELL.*

Defendant, Daniel E. Trevizo, appeals his April 15, 2005 judgment of conviction of burglary, assault, felony menacing, and violation of a protection order. We reverse and remand for a new trial.

## I.

The victim was in the midst of a divorce from defendant at the time of the charged incident. The victim had obtained a protective order against defendant, and she had changed the locks of the doors on what had been the marital residence in an effort to keep defendant out of the house. On the night of the incident, the victim was at home in bed. Her three sons were at home with her. She awoke in her bedroom to find defendant standing next to her bed. Defendant beat her on the head and body with a bicycle pump. The victim ran out of the bedroom and out of the house and went to a neighbor's house. She told one of her sons to call 911.

Two police officers were dispatched in response to the 911 call, and they arrived at the scene within a few minutes. The victim was sitting at the dining room table crying and visibly upset, holding a towel to her bleeding head. She stated to one of the officers that her husband had broken into the house and had beaten her, that she had a restraining order against him, and that he had fled the scene. The officers inspected the residence in an attempt to recover evidence, but the record does not reflect that the officers conducted any search for defendant at that time. Medical assistance arrived about fifteen minutes later, and an ambulance transported the victim to the hospital for treatment.

The victim testified at a preliminary hearing, but committed suicide before trial, and she was, therefore, unavailable to testify. At a pretrial hearing, the prosecution indicated its intent to introduce the victim's statements to the responding officers as evidence at trial. In response to a defense Confrontation Clause challenge, the court ruled that the statements were nontestimonial, because they were spontaneous and did not result from police questioning. The court determined that the victim had not intended to "build a case" against defendant, but was trying to explain what had happened to her, perhaps in anticipation of medical treatment and "perhaps trying to relate events occurring, not knowing where the perpetrator had gone." At trial, one officer was allowed to repeat the victim's statements.

The court also admitted defendant's sister's testimony that, nine days before the assault, defendant had told her that he "wanted to bash [the victim's] head in."

A jury convicted defendant of first degree burglary (and a related crime of violence charge), second degree burglary, first degree assault (and a related crime of violence charge), felony menacing, and violation of a protective order.

## II.

■ Defendant contends that his right under the Sixth Amendment to the United States Constitution to confront witnesses against him was violated when the officer was allowed to testify to the victim's out-of-court statements. We agree.

■ The Sixth Amendment guarantees a defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI; *Crawford v. Washington,* 541 U.S. 36, 42, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Under the Sixth Amendment, testi-

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2007.

monial hearsay must be excluded if the declarant is unavailable and the defendant has had no prior opportunity to cross-examine the declarant on the substance of the statements. *Crawford*, 541 U.S. at 42, 124 S.Ct. 1354.

Whether a statement is testimonial is a question of law subject to de novo review. *United States v. Thomas*, 453 F.3d 838, 843 (7th Cir.2006). We conclude that the victim's statements here were testimonial in character.

The Supreme Court in *Crawford* held that, at a minimum, prior testimony at a preliminary hearing, before a grand jury, or at a former trial, or statements elicited during police interrogations are testimonial. *Crawford*, 541 U.S. at 68, 124 S.Ct. 1354. The victim's statements do not fall within any of these categories. Although the statements were made to police officers, it does not appear that they were the product of direct police interrogation.

However, other types of testimonial statements alluded to by the Supreme Court consist of

1) "ex parte in-court testimony or its functional equivalent—that is material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially"; 2) "extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony or confessions"; and 3) "*statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.*"

*People v. Vigil*, 127 P.3d 916, 921 (Colo.2006) (emphasis added) (quoting Crawford, 541 U.S. at 51–52, 124 S.Ct. 1354).

Defendant argues that the statements here were made under circumstances such that an objective witness would believe that the statements would be available for use at a later trial. We agree.

An "objective witness" has been interpreted by the Colorado Supreme Court to mean "an objective reasonable person in the declarant's position." *People v. Vigil*, 127 P.3d at 924.

The victim here told police immediately upon their entry to her house that she *had been* beaten by her husband and that there was a court protective order against defendant. And the victim had previously filed a complaint for violation of that order. We conclude that an objective reasonable person in the victim's position under these circumstances would have assumed that the information she provided to police would be used at a later trial.

There is, in addition, a further ground for our conclusion that the victim's statements here were testimonial. In *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), the Supreme Court articulated the following test for determining whether similar statements are testimonial and, therefore, inadmissible under *Crawford*, absent a prior opportunity for cross-examination by the defendant:

Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances *objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.*

*Id.* at 2273–74 (emphasis added).

No Colorado case has directly addressed the issue whether statements made to police officers responding to a crime scene are considered testimonial. However, both *Crawford* and *Davis*, as well as *Raile v. People*, 148 P.3d 126 (Colo.2006), provide guidance on this point.

"[I]t is the statements themselves and not the interrogator's questions that must be evaluated to determine whether a statement is testimonial in nature." *Raile*, 148 P.3d at 130. In *Davis*, the Court distinguished between the statements of two different individuals. One declarant was in immediate

danger and seeking aid, while the other was protected by police and telling a story about the past. *Davis*, 126 S.Ct. at 2278. The Court noted that, in the latter case, the statements "were neither a cry for help nor the provision of information enabling officers immediately to end a threatening situation." *Id.* at 2279.

In *Raile*, the Colorado Supreme Court, applying *Davis*, noted that the first inquiry must be whether, from the point of view of an objectively reasonable witness, there was an ongoing emergency that prompted the declarant's statements. *Raile*, 148 P.3d at 130, 132. If not, the statements must be considered to be testimonial.

We conclude that, here, there was no ongoing emergency at the time the statements were made; when they were made, there was no immediate threat to the victim, defendant had left the scene, and the police had control of the situation. *See id.* at 133; *State v. Kirby*, 280 Conn. 361, 908 A.2d 506, 523 (2006) (concluding victim's statements were testimonial under *Davis* where, although victim may have needed medical attention when she made subject statements, statements related past events and victim was no longer under any threat from the defendant), *cited with approval in Raile, supra. But see United States v. Clemmons*, 461 F.3d 1057 (8th Cir.2006); *State v. Alvarez*, 213 Ariz. 467, 143 P.3d 668 (Ariz.Ct.App.2006).

In addition, the victim's statements were explanations of past events, not simply a description of ongoing events. Under *Davis*, statements are testimonial if their primary purpose is to explain past events, rather than to describe ongoing criminal activity. *Davis*, 126 S.Ct. at 2276.

Like the court in *Raile*, therefore, we conclude that, here, "[t]here was nothing in either the police questions or [the victim's] answers that would or could resolve a then-existing problem." *Raile*, 148 P.3d at 133. The victim's statements related not to "what is happening," but rather to "what happened." *See Davis*, 126 S.Ct. at 2278. The victim's statements concerned the facts of a past crime, were made in order to identify its perpetrator, and did not give information necessary to resolve an ongoing emergency.

The fact that the victim's statements may have been volunteered to officers, rather than made in response to questioning, is not dispositive. Because the statements do precisely what a witness does on direct examination, they are inherently testimonial. *See id.*

■ We also conclude that the admission of the victim's statements cannot be considered mere harmless error.

■ Confrontation Clause violations are constitutional trial errors. *Arteaga–Lansaw v. People*, 159 P.3d 107 (Colo.2007). However, reversal of a conviction is warranted only if admission of the statements was not harmless beyond a reasonable doubt. *Id.* at 110.

■ We review trial errors for the effect they had on the trial. *Raile*, 148 P.3d at 133. Our inquiry is whether "the guilty verdict[s] actually rendered in this trial [were] surely unattributable to the error." *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). "If there is a reasonable probability that the defendant could have been prejudiced by the error, it cannot be a harmless error and . . . we must reverse the conviction below." *Raile*, 148 P.3d at 134 (citing *Blecha v. People*, 962 P.2d 931, 942 (Colo.1998)).

■ In assessing the potential harmfulness of an error, the following considerations are relevant:

(1) the importance of the declarant's statement to the prosecution's case; (2) whether the statement was cumulative; (3) the presence or absence of corroborating or contradictory evidence on the material points of the witness's testimony; (4) the extent of the cross-examination otherwise permitted; (5) the overall strength of the prosecution's case.

*Arteaga–Lansaw*, 159 P.3d at 110.

The People point to the following evidence as corroborating defendant's guilt: (1) the victim's sons' testimony identifying defendant as the assailant; (2) their testimony, which, combined with the lack of signs of forced entry, supported an inference that defendant had entered the house by opening the garage door; (3) defendant's sister's testimony that

nine days before the charged incident, defendant had said he "wanted to bash [the victim's] head in"; and (4) a neighbor's testimony that he saw defendant walk down the victim's driveway a few hours before the assault. The People also contend that it is significant that defense counsel extensively cross-examined the responding officer about the victim's statement.

However, the sons' identification of defendant was equivocal at best. In contrast, the victim's statements identifying defendant as her attacker were both specific and relevant to each charge of which defendant was convicted. Indeed, these statements to the officer were central to the prosecution's case. They provided the only unequivocal information identifying defendant as her assailant. Hence, we cannot conclude that the guilty verdicts rendered in this trial were surely unattributable to the error of admitting the victim's statements. We cannot say, beyond a reasonable doubt, that defendant was not prejudiced by the admission of the erroneously admitted statements. We must, therefore, reverse these convictions.

### III.

Our decision that the trial court erred in admitting the officer's testimony renders defendant's remaining claims of error moot. However, because it may arise on retrial, we address defendant's argument that the trial court committed reversible error in admitting testimony about defendant's statement to the effect that he wanted to bash the victim's head in.

Defendant's statement was not hearsay; it was, rather, an admission by a party opponent under CRE 801(d)(2). *See People v. Meier*, 954 P.2d 1068 (Colo.1998). Therefore, its admission was not error.

The judgment is reversed, and the case is remanded for a new trial.

Judge TAUBMAN and Judge ROY concur.