**Adalilia ARTEAGA–LANSAW, Petitioner**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 05SC763.**

Supreme Court of Colorado,
En Banc.

May 21, 2007.

Rehearing Denied June 11, 2007.[*]

---

[*] Justice Eid does not participate.

Douglas K. Wilson, Colorado State Public Defender, Shann Jeffery, Deputy State Public Defender, Denver, Colorado, Attorneys for Petitioner.

John W. Suthers, Attorney General, Jennifer M. Smith, Assistant Attorney General, Denver, Colorado, Attorneys for Respondent.

Justice COATS delivered the Opinion of the Court.

The defendant sought review of the court of appeals' judgment affirming her convictions of crimes including theft and forgery. *See Arteaga–Lansaw v. People,* No. 03CA881, 2005 WL 2249903 (Colo.App. Sept. 15, 2005). The appellate court rejected her challenge to the admission of the deceased victim's previous out-of-court statements as a violation of her constitutional right to confront the witnesses against her. Because certain of those statements were testimonial in nature and had not been subject to cross-examination by the defendant, their admission was error. Because, however, their admission in this case was harmless beyond a reasonable doubt, reversal of the defendant's convictions is not required. The judgment of the court of appeals is therefore affirmed.

## I.

Adalilia Arteaga–Lansaw was charged with theft of more than $500, two counts of forgery, and criminal impersonation. She was convicted of all charges, as well as a lesser non-included offense of false reporting, requested by her; and she was sentenced to three years probation.

According to the undisputed evidence presented at trial, Julia Keck was a ninety-eight-year-old woman who lived alone in her home in Lakewood. After breaking both her hip and wrist, Keck was temporarily moved into a rehabilitation center, where she met and befriended the defendant, a nurses' aid. At some point during the next month, Keck gave the defendant a key and allowed her to enter her house to clean and prepare the house for Keck's return. After Keck and a friend noticed the defendant wearing a ring they believed to be Keck's, Keck reclaimed her key.

Following a month of rehabilitation, Keck was able to return home, with the help of her friend and her friend's daughter, to check on her belongings and pick up some personal things. According to her friend's testimony, after looking around her house, Keck became hysterical, screaming that the defendant had stolen many of her possessions. Keck was then prompted to look through her mail and bank statements and again became distraught upon discovering five cashed checks, worth $500 each, which had been made out to the defendant and signed "Julia Keck." The defendant did not dispute the fact that she had made, endorsed, and cashed the five checks.

The police were called and immediately responded, taking statements from Keck, her friend, her friend's daughter, and a neighbor who had come over. According to Agent Lopez, Keck then enumerated with specificity the items she believed had been stolen from her house. She also expressly denied authorizing the defendant to write any checks on her behalf.

After interviewing the witnesses, other officers went to the defendant's house to question her. When confronted, the defendant initially lied about her identity and sent them away. Later, however, she presented herself at the police station, where she was interviewed and released.

The defendant was eventually charged with forgery (for falsely making the checks) and theft (for cashing them and keeping the proceeds, as well as taking jewelry and other items from Keck's residence). The defendant was also charged with criminal imper-

sonation for attempting to deceive the police about her identity. Before Keck could testify against the defendant, however, she fell ill and died.

The defendant challenged all of Keck's out-of-court statements, in limine, on grounds of hearsay and confrontation; however, the trial court postponed ruling on the defendant's motion until trial. During the prosecution's examination of its first witness, the trial court heard argument and concluded that all of Keck's statements, including those made to Agent Lopez, were admissible as "excited utterances."

Although the defendant did not testify at trial, or present any evidence on her own behalf, she conceded through her counsel and her theory of the defense instruction that she had written all five checks to herself in the amounts alleged by the prosecution. Her theory of defense was that her acts of kindness had been distorted by Keck—a senile elderly woman who had become obsessed with the false idea that the defendant was stealing from her.

Shortly after her convictions, the United States Supreme Court reconsidered the confrontation guaranty of the federal constitution, *see Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), significantly altering the admissibility of testimonial out-of-court statements. Among her various assignments of error on appeal, the defendant challenged her convictions on the grounds that the admission of Keck's out-of-court statements violated her constitutional rights, as construed in *Crawford*.

The court of appeals affirmed, finding Keck's out-of-court statements to be nontestimonial and therefore not barred by the confrontation rule announced in *Crawford*. This court granted a writ of certiorari to consider whether the admission of the victim's statements to Agent Lopez requires reversal.

## II.

■ The Sixth Amendment Confrontation Clause bars the admission, in all criminal prosecutions, of testimonial statements of a witness who does not appear at trial, unless he is unavailable and the defendant has had a prior opportunity for cross-examination. U.S. Const. amend. VI.; *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); *see also People v. Vigil*, 127 P.3d 916, 921 (Colo.2006); *Compan v. People*, 121 P.3d 876, 880 (Colo.2005). Because only "testimonial statements" cause the declarant to be a "witness" within the meaning of the Confrontation Clause, the testimonial or nontestimonial character of any statement is essential to determine whether it is subject to the limitations of the Confrontation Clause at all. *Davis v. Washington*, —— U.S. ——, ——, 126 S.Ct. 2266, 2277, 165 L.Ed.2d 224 (2006).

■ Although the Supreme Court has not attempted an exhaustive definition, it has characterized as testimonial any statement made during police interrogation when the circumstances objectively indicate that there is no ongoing emergency and the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution. *Davis*, 126 S.Ct. at 2277. While greater formality in an interrogation may make more apparent the testimonial character of the declarant's statements, their categorization as testimonial or nontestimonial is ultimately a function of the purpose for the questioning. *Davis*, 126 S.Ct. at 2273–74. Where any danger or need for immediate assistance has passed and the interrogation is clearly for the purpose of establishing past events, statements made to an investigating officer, whether reduced to writing and signed by the declarant or embedded in the memory (and perhaps notes) of the interrogating officer, are testimonial. *See Davis*, 126 S.Ct. at 2276–77; *Raile v. People*, 148 P.3d 126, 132–33 (Colo.2006).

Here, there can be no question that when Keck talked to Agent Lopez, there was no ongoing emergency. She was reporting a crime that had taken place days, if not weeks, before. Although she may have been upset when the police arrived, Keck was not being victimized or threatened at that moment. Her statements to Agent Lopez were clearly testimonial, and because there is no suggestion that the defendant ever had an opportunity to cross-examine her with regard

to those statements, their admission at trial violated the defendant's Sixth Amendment confrontation right.

## III.

 Unless error is structural, affecting the very framework within which the trial proceeds, its occurrence does not necessarily require the reversal of a criminal conviction. *Neder v. United States,* 527 U.S. 1, 8–9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999); *Vigil,* 127 P.3d at 929; *People v. Miller,* 113 P.3d 743, 749 (Colo.2005). Unlike structural error, error in the trial process is subjected to differing standards of review, depending upon the precise nature of the error and the presence or absence of a specific contemporaneous objection, but if it can be determined, beyond a reasonable doubt, that trial error was harmless, reversal is never the appropriate remedy. *Vigil,* 127 P.3d at 929 (citing *Neder,* 527 U.S. at 8, 119 S.Ct. 1827). Trial error is considered harmless if there is no reasonable possibility that it affected the guilty verdict. *Sullivan v. Louisiana,* 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); *People v. Fry,* 92 P.3d 970, 980 (Colo.2004); *Griego v. People,* 19 P.3d 1, 9 (Colo.2001).

We have previously made clear that Confrontation Clause violations are in the nature of trial, rather than structural, error. *Vigil,* 127 P.3d at 929; *Fry,* 92 P.3d at 973. In the context of statements admitted in violation of the Confrontation Clause, we have also identified various considerations that may be relevant to a determination of harmlessness. These have included: (1) the importance of the declarant's statement to the prosecution's case; (2) whether the statement was cumulative; (3) the presence or absence of corroborating or contradictory evidence on the material points of the witness's testimony; (4) the extent of the cross-examination otherwise permitted; (5) the overall strength of the prosecution's case. *Fry,* 92 P.3d at 970; *Merritt v. People,* 842 P.2d 162, 169 (Colo. 1992); *People v. Harris,* 43 P.3d 221, 230 (Colo.2002); *Blecha v. People,* 962 P.2d 931, 942 (Colo.1998).

The defendant's convictions for theft and forgery were her only convictions to which Keck's statements to Agent Lopez were rele-

vant. Because the defendant did not deny making the checks to herself, endorsing them in Keck's name, and cashing them and keeping the proceeds, her forgery convictions turned entirely on the question of her authorization to do so. While she was charged with stealing other items as well, the amount of the checks was such that if she were not authorized to make or cash them, her doing so with an awareness of that fact would similarly compel her conviction of theft of more than $500. Since the defendant was convicted of forgery, the jury clearly found that she knew she lacked authorization. Therefore the court's error in admitting Keck's statements to Agent Lopez was necessarily harmless unless a reasonable possibility exists that the jury may not have reached this conclusion without those statements.

The defendant did not testify or present any evidence to suggest that Keck had ever authorized her to make and cash any of her checks, much less checks with a value of $2,500. Because Keck died before trial, she too failed to testify about her own intentions and conduct. Apart from the circumstances surrounding the writing and cashing of the checks, however, the jury was able to learn of and consider Keck's prior relationship with and suspicion of the defendant.

Keck's friend was with her when they together confronted the defendant about wearing a ring they recognized as one belonging to Keck; and along with her daughter and a neighbor of Keck's, her friend observed Keck's unguarded reaction to finding the paid checks. She testified that Keck screamed, "Oh my God ... Look what she's done to me. Look what she's done ... $500, $500, look what she's done." Moments later, Keck cried to her neighbor, "She took my checks." Immediately thereafter, Keck told Agent Lopez that the defendant had made, signed, and cashed her checks without authorization.

 Unlike pre-*Crawford* statements held barred by the Confrontation Clause, Keck's statements to Agent Lopez were inadmissible not because they lacked sufficient indicia of reliability but merely because they were tes-

timonial in nature and their reliability could not be tested in the manner required by the Constitution for testimonial statements. Almost identical statements by Keck, made spontaneously moments earlier with even less opportunity for reflection, were, however, also presented to the jury through three other witnesses, in a form upheld as nontestimonial by the court of appeals. Because authorization was the only issue of consequence to the harmfulness of the error, and the statements erroneously admitted through Agent Lopez were cumulative of the testimony of three other witnesses about Keck's denials of authorization, it seems clear beyond a reasonable doubt there is no reasonable possibility that the jury would have reached a different verdict in the absence of the erroneously admitted statements.

## IV.

Although on different grounds, the judgment of the court of appeals is therefore affirmed.

Justice EID does not participate.