23CA0629 Peo v Montoya 07-17-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0629
Adams County District Court No. 21CR974
Honorable Roberto Ramírez, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Donald Valentino Montoya,

Defendant-Appellant.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE GOMEZ
Freyre and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 17, 2025

---

Philip J. Weiser, Attorney General, Allison S. Block, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Tanja Heggins, Alternate Defense Counsel, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Donald Valentino Montoya, appeals the judgment of conviction entered on a jury verdict finding him guilty of assault. Because we conclude that the district court reversibly erred by admitting hearsay evidence in violation of Montoya's right to be confronted with the witnesses against him, we reverse the judgment and remand the case for a new trial.

## I.     Background

¶ 2     Montoya and M.M., who is the victim in this case, were a couple and had two children together.

¶ 3     One afternoon, police responded to a call at the couple's home due to an alleged assault.

¶ 4     The victim spoke with an emergency medical technician (EMT) about her injuries before being transported by ambulance to the hospital. After an exam by an emergency room physician and nurse, which included a general emergency assessment and a CT scan, the victim was transported to a second hospital. There, she was seen by a forensic nurse examiner (FNE).

¶ 5      The People charged Montoya with second degree assault and third degree assault, alleging that he had strangled and struck the victim, causing her to suffer bodily injury.[1]

¶ 6      Because the prosecution was uncertain whether the victim (who had waived receipt of a subpoena) would appear for trial, it sought to admit the victim's statements to the EMT and the FNE. The court admitted the two sets of statements, ruling that they were nontestimonial statements made for purposes of medical diagnosis or treatment, and that they therefore did not violate Montoya's confrontation rights and were admissible under an exception to the rule against hearsay.

¶ 7      The jury convicted Montoya of both charges.

¶ 8      On appeal, Montoya contends that (1) the district court erred by admitting the victim's statements to the EMT and the FNE; (2) the prosecutor committed misconduct during closing arguments; and (3) the judgment must be reversed due to cumulative error.

¶ 9      We agree in part with the first contention. Specifically, while we reject Montoya's argument that the court erred by admitting the

_____

[1] The People also charged Montoya with two counts of child abuse but later dismissed those charges.

victim's statements to the EMT, we agree with his argument that the court erred by admitting the victim's statements to the FNE. Because we cannot conclude that the error was harmless beyond a reasonable doubt, we reverse the judgment and remand the case for a new trial. And because the alleged prosecutorial misconduct is not likely to recur on retrial, we decline to consider Montoya's second and third appellate contentions.

## II. Admission of the Victim's Statements

¶ 10 We first set out the relevant legal standards and then turn to Montoya's arguments challenging the admission of the victim's statements to the EMT and the FNE.

### A. Legal Standards and Standard of Review

#### 1. Confrontation Clause

¶ 11 The Confrontation Clauses of the United States and Colorado Constitutions guarantee criminal defendants the right to be confronted with the witnesses against them. U.S. Const. amend. VI; Colo. Const. art. II, § 16; *see also Nicholls v. People*, 2017 CO 71, ¶ 31 (Colorado's confrontation clause is interpreted to be "commensurate with the federal Confrontation Clause").

¶ 12    The Confrontation Clauses are implicated only by statements that are testimonial.  *Nicholls*, ¶ 31.  A statement is testimonial if, based on an objective view of the totality of the circumstances, its primary purpose was "to 'creat[e] an out-of-court substitute for trial testimony.'"  *People v. Garcia*, 2021 CO 7, ¶ 9 (alteration in original) (quoting *Ohio v. Clark*, 576 U.S. 237, 245 (2015)).  We consider the primary purpose of the statement at the time it was made — not at the time it is proffered at trial.  *Id.* at ¶ 10.  We also look to "the purpose that a reasonable declarant in those circumstances would have had, rather than the declarant's subjective or actual purpose."  *People v. McFee*, 2016 COA 97, ¶ 37.  Relevant considerations in assessing a statement's purpose include the existence of an ongoing emergency, the formality or spontaneity of the statement, the environment in which the statement was made, and the identity of the person to whom the statement was made.  *Id.*

¶ 13    If statements are testimonial, the Confrontation Clauses preclude their admission unless (1) the witness is unavailable and (2) the defendant had a prior opportunity for cross-examination.  *Garcia*, ¶ 8; *Campbell v. People*, 2020 CO 49, ¶ 23.

¶ 14    We review de novo whether the admission of evidence violated a defendant's Confrontation Clause rights.  *People v. Perez*, 2024 COA 94, ¶ 11.

## 2.    Hearsay

¶ 15    Hearsay — an out-of-court statement offered to prove the truth of the matter asserted — is generally inadmissible unless it satisfies an enumerated exception.  CRE 801(c); CRE 802.

¶ 16    One such exception is for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."  CRE 803(4).  Such statements are presumed to be reliable because of patients' belief that providing truthful information to medical professionals will assist in effective diagnosis and treatment.  *People v. Abdulla*, 2020 COA 109M, ¶ 80.  Under this exception, a statement made as part of a medical exam is admissible if (1) it is reasonably pertinent to treatment or diagnosis and (2) its content is such as is reasonably relied on by a physician in treatment or diagnosis.  *Id.*

¶ 17    We review a district court's evidentiary rulings for an abuse of discretion. *Id.* at ¶ 61. A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair or misapplies the law. *Id.*

## B.    Statements to the EMT

¶ 18    Applying these standards, we reject Montoya's assertion that the district court erred by admitting the victim's statements to the EMT.

### 1.    Additional Background

¶ 19    After emergency personnel arrived on the scene, the victim was taken into the back of an ambulance, where an EMT asked her about her injuries. The exchange was captured on video by a body camera worn by a police officer who responded to the scene.

¶ 20    In the approximately one-and-a-half-minute video, the victim had an apparent injury on her forehead and was crying and short of breath. After learning the victim's name, the EMT conducted a physical assessment and asked her the questions like the following: "Where are you hurting?"; "Does it hurt here?"; "What happened today, did you get choked?"; "What did you get hit with?"; "With a hand or with something else?"; "You have a tear mark in your ear,

6

what's that from?"; "Do you have anything on the other side?"; "What's going on with your chest, you've got an abrasion there, too?"; "Take a few deep breaths for me, does it hurt to do that?"; and "Did he hit you in the belly at all?" The victim responded to the EMT's questions, telling him where her body hurt and how the injuries happened.

¶ 21 During the trial, the prosecution sought to admit the body camera footage containing the victim's statements to the EMT. After viewing the video, the district court found that the victim was being seen by a medical professional "for the purpose of medical diagnosis and treatment and not with an eye towards litigation or any criminal investigatory purpose." The court thus concluded that the victim's statements were nontestimonial and were excepted from the rule against hearsay. The court accordingly allowed the video to be played at trial.

### 2. Confrontation Clause Ruling

¶ 22 We agree with the district court's determination that the victim's statements to the EMT were not made for the primary purpose of creating a substitute for trial testimony. *See Garcia*, ¶ 9. Instead, viewed from the perspective of a reasonable declarant in

the victim's position, the purpose of her statements was to facilitate medical diagnosis and treatment. *See McFee*, ¶ 37.

¶ 23    The victim made the statements to the EMT shortly after being injured and while in imminent need of medical attention. She was in the back of an ambulance, an environment associated with the provision of medical care. And, while a police officer happened to be present, the victim was communicating primarily with the EMT, a medical provider, who asked questions exclusively about her symptoms and injuries while conducting a physical exam. *See id.* (relevant considerations in determining whether statements are testimonial include the existence of an ongoing emergency, the environment in which the statements were made, and the identity of the person to whom they were made); *Clark*, 576 U.S. at 246 (statements to others are "much less likely to be testimonial than statements to law enforcement officers"). Moreover, in responding to the EMT, the victim didn't identify her assailant or describe the assault in detail. *See People v. Jones*, 313 P.3d 626, 636 (Colo. App. 2011) (a victim's statements to medical personnel were nontestimonial where they didn't include "any identifying

information about her assailant or details of the assault"), *rev'd on other grounds*, 2013 CO 59.

¶ 24    Accordingly, we conclude that the victim's statements to the EMT were not testimonial and that their admission did not violate the Federal or Colorado Confrontation Clause.  *See Nicholls*, ¶ 31.

### 3.    Hearsay Ruling

¶ 25    For similar reasons, we discern no abuse of discretion in the district court's determination that the victim's statements to the EMT satisfied the medical diagnosis or treatment hearsay exception.

¶ 26    The court determined that these statements fell within the exception, as they "were made for the purposes of medical diagnosis or treatment" and they "describ[ed] the present symptoms, the present pain, sensations, and the general character of the cause or external source insofar as reasonable pertinent to diagnosis or treatment."  We agree and therefore conclude that the court's hearsay ruling doesn't represent an abuse of discretion.  *See* CRE 803(4); *Abdulla*, ¶ 80.

### C.    Statements to the FNE

¶ 27    However, we agree with Montoya's assertion that the district court erred by admitting the victim's statements to the FNE in

violation of Montoya's Confrontation Clause rights.  We also agree with his assertion that this error warrants a new trial.

### 1.    Additional Background

¶ 28    The FNE met with the victim at the second hospital after the victim received initial treatment at another hospital.  The FNE exam was requested by one of the responding officers.

¶ 29    Before the exam, the FNE told the victim what the exam would look like and went over reporting options with law enforcement. The victim then signed a consent form, which conveyed that the exam "consists of collecting evidence and laboratory specimens necessary for investigation."  The victim also initialed statements indicating that she would "be offered treatment for infection and pregnancy prevention," she could "request to be seen by the Emergency Department physician for any medical problems or concerns," and she "consent[ed] to the release and disclosure of the findings of th[e] exam to the law enforcement agency."[2]

¶ 30    Next, the FNE asked the victim about her medical history and about the details of the assault.  During this portion of the exam,

---

[2] The form was one designed for sexual assault exams, but the FNE said she uses the same form for all types of forensic exams.

the FNE wrote down the victim's description, verbatim, of what

happened during the assault:

> I just got back from buying my son an Easter basket.  He lent me his bank card for it.  I took the kids with me while he was at the house.  I got back and smelled alcohol on his breath.  I asked if he was drinking and he lied so I asked him to leave.  He accused me of taking his wallet.  He started calling me a bitch and a cunt.  I put my daughter in the swing in the bedroom and told my son to check on her so he wouldn't be in the room with us.  I closed the bedroom door to keep them safe.  And then I told him he needs to leave.  He threatened to take both the kids and leave.  He kept telling me to give him his wallet, but I didn't have it.  He pushed me down and started choking me.  After he stopped, I said I was going to call the cops.  I started to dial and he took the phone from me.  I said I was going to go take care of the kids and put the baby in the bath to try to defuse the situation.  He kept trying to leave with my son, so I blocked the front door.  He put down my son and started punching me in my face.  He yelled at me and I kept begging him.  He kept telling me to give him my daughter.  His punch slid off me and hit her.  And he swore he didn't hit her, but he was mad when I said that he hit her.  He kept hitting me.  I dropped my phone, picked it up, then started calling the cops and he ran out the back door.  I forgot — after he choked me, I said, "Are you really going to do this?  You're blocking my airway."  And he just laughed.

¶ 31    The FNE then performed a full physical exam of the victim and documented her injuries.

¶ 32    Before trial, the prosecution filed a motion seeking the admission of the victim's description of the assault to the FNE. Montoya objected. The district court ruled that it would admit the statements, concluding that the statements didn't implicate Montoya's confrontation rights because they were made for the purpose of medical diagnosis or treatment and not to develop testimony for trial.

¶ 33    At trial, the FNE testified as an expert in forensic nursing and examinations. In addition to discussing the signs and symptoms of strangulation and describing the victim's injuries, the FNE was permitted to read into evidence the victim's description of the assault that the FNE had transcribed during the exam. The transcription itself was also admitted into evidence.

2.    Confrontation Clause Ruling

¶ 34    We begin by considering whether the victim's statements describing the assault to the FNE were testimonial. Thus, we ask whether, viewed from the perspective of a reasonable declarant at the time of the statements, the primary purpose of the statements

was to create an out-of-court substitute for trial testimony.  *See Garcia*, ¶¶ 9-10; *McFee*, ¶ 37.  We conclude that it was.

¶ 35     As our supreme court has recognized, forensic medical exams serve dual medical and investigative purposes as both a "patient-centered medical procedure" and a "valuable tool for collecting . . . evidence."  *Teague v. People*, 2017 CO 66, ¶ 2; *see also id.* at ¶¶ 10-13.  Given this dual role, a court should "distinguish[] between those aspects of [an] examination which were diagnostic in nature and those aspects which could arguably be labeled investigatory."  *People v. Vigil*, 127 P.3d 916, 924 (Colo. 2006); *see also United States v. Norwood*, 982 F.3d 1032, 1045, 1049-50 (7th Cir. 2020) (in assessing statements made during a "part-medical, part-forensic examination," courts should parse those statements that are testimonial from those that are nontestimonial).

¶ 36     Again, we take into account such considerations as the existence of an ongoing emergency, the formality or spontaneity of the statements, the environment in which the statements were made, and the identity of the person to whom the statements were made.  *See McFee*, ¶ 37.  Further, courts in other jurisdictions

addressing statements made to dual-purpose medical professionals have emphasized three additional considerations:

- whether other medical professionals had already examined and treated the declarant, *see, e.g., State v. Cannon*, 254 S.W.3d 287, 305 (Tenn. 2008) (statements to a sexual assault nurse examiner (SANE) were testimonial, in part because the victim had already been treated by an emergency room physician and nurse, such that "there was no ongoing emergency");

- whether the declarant was made aware, such as by the execution of a consent form, that the medical personnel would be gathering evidence, *see, e.g., State v. Miller*, 264 P.3d 461, 487-90 (Kan. 2011) (statements to a SANE were nontestimonial, in part because nothing in the record indicated that the child victim or her mother were informed about the collection of evidence); and

- whether the declarant was capable of understanding the likelihood of use in a future prosecution, *see, e.g., United States v. Barker*, 820 F.3d 167, 171 (5th Cir. 2016) (statements to a SANE were nontestimonial, in part

14

because the child victim "lacked the understanding of the criminal justice system to intend her comments to function as a substitute for trial testimony").

¶ 37 Here, we conclude that a reasonable declarant in the victim's position would have understood that the primary purpose of her statements describing the assault were for investigatory purposes and potential prosecution rather than merely to facilitate medical diagnosis and treatment. *See Garcia*, ¶ 9; *McFee*, ¶ 37.

¶ 38 Although the victim made the statements to a medical provider at a hospital, she had already been seen by the EMT and by an emergency room physician and nurse at one hospital before being transferred to a second hospital and meeting with the FNE. Thus, by the time she met with the FNE, there was no longer a medical emergency. And even as the FNE performed a physical evaluation and asked the victim about her injuries and symptoms, other medical providers at the hospital were responsible for monitoring the victim's vital signs and potential need for medical assistance. Therefore, a reasonable person in the victim's position would understand the FNE's role as separate from that of the other providers who were monitoring her and providing her care.

¶ 39    Moreover, the consent form the victim completed before the FNE exam informed her that the exam would "consist[] of collecting evidence . . . for investigation." The form's statement that the victim could "request to be seen by the Emergency Department physician for any medical problems or concerns" also implied that any medical treatment would be separate from the exam the FNE was providing. And by initialing and signing the form, the victim "consent[ed] to the release and disclosure of the findings of th[e] exam to the law enforcement agency."

¶ 40    Finally, because the FNE exam was requested by one of the responding officers, it clearly was part of an initial investigation into the assault. *See Vigil*, 127 P.3d at 922 (considering "whether and to what extent government officials were involved in producing the statements" in deciding whether the statements were testimonial).

¶ 41    The totality of the circumstances, therefore, leads us to conclude that the victim's statements describing the assault to the FNE were testimonial in nature. While other statements by the victim relating to her injuries and symptoms may have been made for purposes of medical diagnosis and treatment, the statements describing what had happened during the assault were not. *See id.*

16

at 924; *see also Jones*, 313 P.3d at 636 (a victim's statements to medical personnel that she'd been raped and that her assailant had held her mouth closed while he assaulted her were nontestimonial, in part because the victim didn't relay "any identifying information about her assailant or details of the assault").

¶ 42    Because these statements were testimonial, they were not admissible unless (1) the victim was unavailable and (2) Montoya had a prior opportunity for cross-examination. *See Garcia*, ¶ 8; *Campbell*, ¶ 23. The second requirement wasn't satisfied, as Montoya undisputedly did not have any prior opportunity to cross-examine the victim on the statements. Thus, the statements were improperly admitted at trial, and we needn't decide whether the first requirement — the victim's unavailability — was also satisfied.[3]

### 3.    Constitutional Harmless Error

¶ 43    We review preserved Confrontation Clause violations under the constitutional harmless error standard. *Perez*, ¶ 11. Under this standard, reversal is required unless we can conclude that the error

---

[3] Because we agree with Montoya's Confrontation Clause challenge, we don't address his related challenge to the same statements as inadmissible hearsay that doesn't fall within the exception for statements made for medical diagnosis or treatment.

17

was harmless beyond a reasonable doubt. *Hagos v. People*, 2012 CO 63, ¶ 11. In evaluating constitutional harmlessness, relevant considerations include

> (1) the importance of the declarant's statement to the prosecution's case; (2) whether the statement was cumulative; (3) the presence or absence of corroborating or contradictory evidence on the material points of the witness's testimony; (4) the extent of the cross-examination otherwise permitted; [and] (5) the overall strength of the prosecution's case.

*People v. Phillips*, 2012 COA 176, ¶ 93 (alteration in original) (quoting *Arteaga-Lansaw v. People*, 159 P.3d 107, 110 (Colo. 2007)). An error of this nature "is considered harmless if there is no reasonable possibility that it affected the guilty verdict." *Id.* (quoting *Arteaga-Lansaw*, 159 P.3d at 110).

¶ 44 We cannot conclude that the error in this case was harmless beyond a reasonable doubt. The prosecution relied on the victim's description of the assault to the FNE to shape the narrative of the case in both opening statements and closing arguments. A review of the record does not indicate that there was any other evidence containing the details of the assault the victim relayed to the FNE. Rather, the other record evidence as to what happened consists

18

largely of the few statements the victim gave to the EMT, evidence relating to the victim's documented injuries but not how they came to be, and body camera footage of Montoya providing a different version of events — that he hadn't been drinking and that he hadn't touched the victim.

¶ 45 Given the lack of corroborating evidence, the presence of some contradictory evidence, and the prosecution's reliance on the victim's statements to the FNE to shape the narrative of the case, there is a reasonable possibility that the admission of the statements affected the guilty verdict. *See id.* Accordingly, we reverse the judgment and remand the case for a new trial.

### III. Disposition

¶ 46 The judgment is reversed, and the case is remanded to the district court for a new trial.

JUDGE FREYRE and JUDGE MEIRINK concur.